

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-367-CR

CHRISTOPHER ANTHONY MILLER                    APPELLANT

V.

THE STATE OF TEXAS                                          STATE

------------

FROM COUNTY CRIMINAL COURT NO. 6 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In one issue, Appellant Christopher Anthony Miller appeals from his conviction for driving while intoxicated (DWI), arguing that the evidence is factually insufficient to sustain the conviction. We affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

## I. Factual and Procedural History

In the early hours of March 3, 2007, Grapevine Police Officer Greg Ross stopped Miller on State Highway 121 for speeding and erratic driving. As he walked up to Miller's car, Officer Ross smelled a strong odor of alcohol emanating from the vehicle. He also noticed that Miller had heavy and watery eyes and that his speech was slurred. When Officer Ross asked where Miller had come from, Miller responded, "Chaucer's in Addison," a bar, and that he had consumed "a beer or two." After taking several minutes to find his license and proof of insurance—even providing Officer Ross a copy of a Firestone receipt—Miller eventually handed over the actual proof of insurance. Officer Ross administered three standardized field sobriety tests: the Horizontal Gaze Nystagmus ("HGN"), the walk-and-turn test, and the one-leg stand test. After Miller had failed all three tests, Officer Ross placed Miller under arrest for DWI and took him to the Grapevine jail, where Miller refused to give a breath sample.

Miller was charged with DWI and entered a plea of not guilty. On September 12, 2007, a jury found Miller guilty. The trial court sentenced Miller to 120 days in the Tarrant County jail. The trial court, however, suspended Miller's sentence to time served, placed him on a two-year probation, and ordered him to pay a $900 fine, plus court costs. This appeal followed.

## II. Factual Sufficiency

Miller complains that "[t]he key piece of evidence presented in this case is the videotape" of his sobriety test performance, and he claims that the videotape does not support the arresting officer's testimony that Miller "flunked the sobriety tests." Therefore, he asserts, "the record cannot support a finding that [Miller] lost the normal use of his physical faculties[,]" and the evidence is insufficient to support his conviction.

### A. Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great

3

weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id.* We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id.* We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id.* at 9.

**B. Analysis**

A person commits DWI "if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003). A person is intoxicated if he does "not have the normal use of mental or physical faculties by reason of introduction of alcohol . . . or any other substance into the body[.]" *Id*. § 49.01(2)(A) (Vernon 2003). Appellant's sole contention is that he was not intoxicated on the morning of March 3, 2007; therefore, we will not address the other elements of DWI.

Miller argues that the evidence presented at trial—specifically the videotape of the field sobriety tests—is factually insufficient to support his conviction. According to Miller, the video only showed that he was uncoordinated and not that he was intoxicated. However, the record shows that Officer Ross did not arrest Miller based solely upon Miller's field sobriety tests. First, Officer Ross testified that the videotape did not show everything he had observed, e.g., the odor of alcohol, Miller's eyes during the horizontal gaze nystagmus test, and the wateriness and heaviness of Miller's eyes. Second, the jury could assess Officer Ross's testimony with the videotape, which was published to the jury. Namely, the jury saw on the videotape that Miller drove erratically, swerved around a slower car, and came to a stop in the center median of State Highway 121, perpendicular to the freeway. Also, the

5

jury saw Miller handing Officer Ross a piece of paper, later determined to be a Firestone receipt instead of his proof of insurance. Furthermore, the jury saw Miller perform the standardized field sobriety tests and could determine how well he performed. During the walk-and-turn test, for example, Miller stepped off the line, turned incorrectly, missed heel-to-toe nine times, and used his arms for balance. Additionally, during the one-leg stand test, Miller swayed and used his arms for balance.

Giving due deference to the jury's determinations of Officer Ross's demeanor and credibility, and its evaluation of the videotape, we cannot say that the evidence of Miller's intoxication is so weak that the verdict is clearly wrong and manifestly unjust. *See Watson*, 204 S.W.3d at 414–15, 417; *Johnson*, 23 S.W.3d at 11. Thus, we hold that the evidence is factually sufficient to support Miller's conviction. We overrule Miller's sole point.

### III. Conclusion

Having overruled Miller's sole point, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: August 29, 2008