AFFIRM; Opinion issued October 30, 2012.



In The

# Court of Appeals

# Fifth District of Texas at Dallas

---

## No. 05-12-00121-CR

---

### JESUS MANUEL GASPAR, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F09-30667-N**

---

# MEMORANDUM OPINION

Before Justices O'Neill, FitzGerald, and Lang-Miers
Opinion By Justice O'Neill

Jesus Manuel Gaspar was indicted for possession with intent to deliver methamphetamine in an amount of four grams or more but less than 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010). The indictment also alleged appellant used or exhibited a deadly weapon, a firearm, during commission of the offense, and included one enhancement paragraph alleging a prior felony conviction. Appellant waived a jury, pleaded guilty to committing the offense, pleaded not guilty to using or exhibiting a deadly weapon, and pleaded true to the enhancement paragraph.[1] The trial court assessed punishment at thirty-five years' imprisonment and

---

[1] Although appellant's judicial confession tracks the language in the indictment, including the use and exhibition of a deadly weapon, a firearm, the plea agreement states "open plea as to deadly weapon," and the record shows the trial court accepted appellant's not guilty plea as to the deadly weapon.

made an affirmative deadly weapon finding. In a single point of error, appellant contends the evidence is insufficient to support the deadly weapon finding. We affirm the trial court's judgment. The background of the case and the evidence admitted at trial are well known to the parties, and we therefore limit recitation of the facts. We issue this memorandum opinion pursuant to Texas Rule of Appellate Procedure 47.4 because the law to be applied in the case is well settled.

During the sentencing hearing, Detective Demoie Clark testified that on June 27, 2009, officers executed a search warrant on a Grand Prairie apartment. The apartment was leased to appellant's girlfriend and appellant's stepmother. Prior to entering, the officers saw appellant and his girlfriend leave in separate vehicles. Two other men were inside the apartment when the officers entered. During the search, officers found several illegal drugs in the kitchen and the closet in the master bedroom. Clark testified a small suitcase inside the closet contained a large quantity of methamphetamine. Later analysis showed the officers seized 145 grams of methamphetamine from the suitcase and kitchen. Officers found a nine millimeter pistol on the top shelf of the closet in close proximity to the suitcase. The gun had one bullet in the magazine but no bullet in the chamber. Clark testified one of the men found inside the apartment stated they "couldn't freely go" into the master bedroom. Clark testified the officers also seized cocaine, marijuana, scales, and baggies.

Marlin Quiles testified she and appellant dated and lived together "off and on" for eight years. Although she leased the apartment with appellant's stepmother, appellant paid the rent and only she, her young daughter, and appellant lived there. Appellant would "come and go and stay if he wanted or leave if he wanted." Quiles testified she knew appellant sold drugs from the apartment, but he was also an auto mechanic. Even though she told appellant not to sell drugs from the apartment because her child lived there, appellant "did it anyway." Quiles testified appellant "usually had a gun." At the time of the offense, she was a full-time beauty school student. She did

-2-

not know there were drugs in the apartment on the day police executed the search warrant.

Stephen Junker, an Irving narcotics detective, testified as an expert on narcotics and those who sell them. Junker testified that guns and drugs often go together. Often the gun is in close proximity to the drugs so it can be easily retrieved. Junker testified drug dealers typically possess more than one type of illegal drug, and they usually possess large quantities of the drugs. Junker testified that dealers use guns to prevent robberies and to try to ward off law enforcement.

Appellant contends the evidence is insufficient to support the deadly weapon finding because (1) the State did not show the gun was used to further the offense; (2) the apartment where the gun was found was not leased to him; (3) he was not inside the apartment when the gun was found; and (4) there is no evidence of who owned the gun or to whom it was registered. The State responds the evidence presented is sufficient to support the trial court's deadly weapon finding.

Article 42.12, section 3g(a)(2) of the Texas Code of Criminal Procedure permits the entry of a deadly weapon finding when it is shown that a defendant used or exhibited a deadly weapon, or he was a party to the offense and knew that a deadly weapon would be used or exhibited. See TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (West Supp. 2011). In the context of a deadly weapon finding, the term "use" means any employment of a deadly weapon, even simple possession, if that possession facilitates the associated felony. *Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004); *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989).

When reviewing the sufficiency of the evidence to support a deadly weapon finding, the real question for review is whether the weapon was found to have facilitated the defendant's possession and intended distribution of the drugs. *See Coleman*, 145 S.W.3d at 655. The defendant's proximity to the gun at the time of the search is not dispositive. *Id*. at 654. The focus is on the proximity of the guns to the drugs, not the proximity of the guns to the defendant. *See id*. at 654–55 (discussing

-3-

*Gale v. State*, 998 S.W.2d 221, 226 (Tex. Crim. App. 1999)). Also, ownership is not necessary to a finding that a defendant used a deadly weapon in violation of article 42.12, section 3g of the Texas Code of Criminal Procedure. *Smith v. State*, 176 S.W.3d 907, 919 (Tex. App.—Dallas 2005, pet. ref'd). Courts must determine whether the cumulative effect of the factors could have allowed a rational jury to determine that the defendant used the weapons to protect the drugs and the proceeds therefrom. *Coleman*, 145 S.W.3d at 655. If we determine the State failed to show a defendant used a deadly weapon in the commission of an offense, we may delete the deadly weapon finding. *See Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2006).

The record reflects the appellant paid rent for the apartment where the gun was found, and he exercised control over the apartment. Appellant sold drugs from the apartment, and the gun was found in the same closet from which drugs were seized. A rational trier of fact could have found, beyond a reasonable doubt, that appellant had knowledge of the gun in the apartment and used that weapon to facilitate the "control, management, or care" of the drugs. Viewing the evidence in the light most favorable to the verdict, we conclude there is sufficient evidence to support the affirmative deadly weapon finding. We overrule appellant's sole point of error.

We affirm the trial court's judgment.


MICHAEL J. O'NEILL
JUSTICE

Do Not Publish
Tex. R. App. P. 47

120121F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## **JUDGMENT**

JESUS MANUEL GASPAR, Appellant

No. 05-12-00121-CR          V.

THE STATE OF TEXAS, Appellee

Appeal from the 195th Judicial District
Court of Dallas County, Texas. (Tr.Ct.No.
F09-30667-N).
Opinion delivered by Justice O'Neill,
Justices FitzGerald and Lang-Miers
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered October 30, 2012.

MICHAEL J. O'NEILL
JUSTICE